## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Lawrence Edralin,

                                    Plaintiff,

                                              Civ. No. 06-2119 (RHK/JSM)
                                              **MEMORANDUM OPINION AND
                                              ORDER**

v.


Bon Appetit Management Company,

                                    Defendant.

---

Frances E. Baillon, Joni M. Thome, Halunen & Associates, Minneapolis, Minnesota, for
Plaintiff.

Anne E. Duprey, Gerald L. Pauling II, Seyfarth Shaw LLP, Chicago, Illinois, Joseph G.
Schmitt, Katie M. Connolly, Halleland Lewis Nilan & Johnson, P.A., Minneapolis,
Minnesota, for Defendant.

---

### Introduction

Plaintiff Lawrence Edralin alleges that he was sexually harassed by a co-employee

throughout his employment with Defendant Bon Appetit Management Company ("Bon

Appetit").  Currently pending before the Court is Bon Appetit's Motion to Dismiss Count II

(Assault and Battery) and Count III (Negligent Supervision & Negligent Retention) of the

Complaint.  Bon Appetit argues that these claims are preempted by the Minnesota Workers'

Compensation Act ("WCA").[1]  For the reasons set forth below, the Court will grant Bon

Appetit's Motion.

## Background

On February 5, 2005, Edralin commenced employment with Bon Appetit as a pizza

station cook and grill preparer.  (Compl. ¶¶ 4-5.)  Edralin alleges that almost immediately

upon being hired, he became the subject of a "relentless workplace joke" in which an

openly gay co-employee, Harley Thompson, "aggressively flaunted his sexual and romantic

interest in" Edralin and subjected him to a daily barrage of inappropriate sexual comments

and innuendo.  (Id. ¶¶ 6-24.)  For example, Thompson's comments included telling Edralin

that he was "looking for a man 'to satisfy my needs'" (id. ¶ 8); that he had a "big cucumber"

for Edralin (id. ¶ 9); and that he wanted to rub whipped cream on Edralin's thighs and lick it

off (id. ¶ 15.  Edralin also alleges that he was physically assaulted by Thompson on several

occasions.  (Id. ¶ 22.)  Specifically, he asserts that Thompson "intentionally touched

[Edralin's] buttocks with his hand and pressed his groin against [Edralin's] buttocks."  (Id.)

Edralin further alleges that management was aware of, and participated in, the

harassment.  (Id. ¶¶ 7-24.)  By way of example, on one occasion Edralin was rolling pizza

dough into balls when John Mensen, Bon Appetit's general manager, approached Edralin

and said: "You like rolling balls in your hands . . . . Harley's?"  (Id. ¶ 10.)  On another

---

[1] Bon Appetit also argues that the claims alleged in Count III are preempted by the Minnesota Human Rights Act ("MHRA").  Because the Court concludes that Edralin's claims are preempted by the WCA, it need not consider this argument.

occasion, Edralin complained to Mensen about being sore from a basketball game the previous day. Mensen responded: "I thought that was from Harley stretching you out." (Id. ¶ 12.)

Edralin alleges that he ultimately concluded that he "could no longer tolerate the daily abuse and was forced to terminate his employment on June 22, 2005." (Id. ¶ 23.) He further alleges that as a result of the harassment, he has suffered anxiety, mental and emotional distress, humiliation, embarrassment, loss of enjoyment of life, lost income, and loss of promotional opportunities. (Id. ¶ 24.)

On May 1, 2006, Edralin commenced the instant action in Hennepin County District Court. Bon Appetit removed the case to this Court on May 24, 2006. In his three-Count Complaint, Edralin alleges four claims: (1) hostile work environment in violation of the MHRA (Count I); (2) assault and battery (Count II); (3) negligent supervision (Count III); and (4) negligent retention (Count III). Edralin seeks compensatory damages in excess of $50,000.

Bon Appetit now moves to dismiss Edralin's assault and battery, negligent supervision, and negligent retention claims for lack of subject-matter jurisdiction, arguing that all three claims are preempted by the WCA. (Def. Mem. at 2-6.)

**Standard of Decision**

Bon Appetit brings its Motion under Rule 12(b)(1) of the Federal Rules of Civil

Procedure.  A motion to dismiss for lack of subject-matter jurisdiction under Rule

12(b)(1) may challenge the plaintiff's complaint either on its face or on the factual

truthfulness of its averments.  See, e.g., Titus v. Sullivan, 4 F.3d 590, 593 (8th Cir. 1993);

Osborn v. United States, 918 F.2d 724, 729 n.6 (8th Cir. 1990).  In a facial challenge to

jurisdiction, the Court must restrict its review to the pleadings and afford the non-moving

party the same protections he would receive when considering a Rule 12(b)(6) motion to

dismiss.  See Osborn, 918 F.2d at 729 n.6.  In other words, the Court must presume that all

of the factual allegations in the complaint are true, and it will not dismiss the claims unless

the plaintiff fails to allege an essential element for subject-matter jurisdiction.  See Titus, 4

F.3d at 593 (citing Eaton v. Dorchester Dev., Inc., 692 F.2d 727, 731-32 (11th Cir. 1982));

Osborn, 918 F.2d at 729 n.6.  Here, Bon Appetit has asserted that the Court lacks subject-

matter jurisdiction over Edralin's tort claims because they are preempted by the WCA, and

Bon Appetit bases its arguments solely on the allegations appearing on the face of the

Complaint.  Therefore, the above standard applies.

**Analysis**

Workers' compensation is designed to ensure the "quick and efficient delivery of

indemnity and medical benefits to injured workers."  Minn. Stat. § 176.001.  Pursuant to the

WCA, employers are required to pay compensation "in every case of personal injury or

death of an employee arising out of and in the course of employment without regard to the

question of negligence." Minn. Stat. § 176.021, subd. 1. Such employer liability "is

exclusive and in the place of any other liability to such employee." Minn. Stat. § 176.031.

Where the WCA provides an employee's exclusive remedy, a court lacks subject-matter

jurisdiction over any claim seeking redress for the employee's injuries. <u>McGowan v. Our

Savior's Lutheran Church</u>, 527 N.W.2d 830, 833 (Minn. 1995).

      In the instant case, Edralin has alleged that he was an employee of Bon Appetit,

suffered injuries while an employee, and the injuries occurred in the course and scope of

his employment. (Compl. ¶¶ 4, 24, 28, 35-37.) Accordingly, it appears that all of the

prerequisites for coverage under the WCA have been satisfied; it would seem, therefore,

that the WCA provides Edralin's exclusive remedy for his injuries and preempts his claims.

      An exception to the WCA exists, however, for injuries "caused by the act of a . . .

fellow employee intended to injure the employee because of personal reasons, and not

directed against the employee as an employee, or because of the employment." Minn. Stat.

§ 176.011, subd. 16. The instant Motion turns on whether this so-called "assault

exception" applies in this case. Edralin argues that it does apply and that his claims are

therefore not preempted; Bon Appetit argues the opposite. Determining whether the

exception applies is a thorny issue, complicated by the fact that "[n]either the legislature

nor the courts have precisely explained what is meant by 'because of personal reasons' and

'employee as an employee.'" <u>Fernandez v. Ramsey County</u>, 495 N.W.2d 859, 861 (Minn.

Ct. App. 1993).  Upon close scrutiny, however, the Court concludes that the exception does

not apply to Edralin's claims.[2]

 In two recent cases – <u>McGowan</u> and <u>Meintsma v. Loram Maintenance of Way, Inc.</u>,

684 N.W.2d 434 (Minn. 2004) – the Minnesota Supreme Court attempted to define the

contours of the assault exception.  In <u>McGowan</u>, the plaintiff, who was the director of a

homeless shelter operated by the defendant, was raped by a disruptive shelter client.  527

N.W.2d at 832.  The rape occurred after the plaintiff had been informed that the client was

causing a disruption in another part of the building.  <u>Id.</u>  She escorted the client into her

office in an attempt to defuse the situation; once inside her office, the client closed the

door and raped her.  <u>Id.</u>  The plaintiff then commenced a negligence action against her

employer, and the employer sought summary judgment on the ground that the plaintiff's

claim was preempted by the WCA.  <u>Id.</u>  The plaintiff argued that the assault exception

applied, but the Supreme Court disagreed, stating:

> As we have said before, assault cases generally fall into three categories: (1)
> those that are non[-]compensable under the Act [i.e., are not preempted] because
> the assailant was motivated by personal animosity toward his victim, arising
> from circumstances wholly unconnected with the employment; (2) those that are
> compensable under the Act [i.e., are preempted] because the provocation or

---

[2] Edralin argues that Bon Appetit's Motion is "premature and inappropriate" because the
question of whether the assault exception applies "is inherently fact driven and not amenable to
dismissal."  (Mem. in Opp'n at 5 (citing <u>Stengel v. East Side Beverage</u>, 690 N.W.2d 380, 385 (Minn.
Ct. App. 2004), and <u>Fernandez</u>, 495 N.W.2d at 863).)  However, neither <u>Stengel</u> nor <u>Fernandez</u>
counsels that a claim cannot be dismissed if the plaintiff can prove no set of facts consistent with the
allegations in the Complaint that would support the application of the assault exception.  <u>See Klaahsen
v. APCOA/Standard Parking, Inc.</u>, No. Civ. 02-620, 2002 WL 1397041, at *6 n.4 (D. Minn. June
26, 2002) (Kyle, J.).

motivation for the assault arises solely out of the activity of the victim as an employee; and (3) those that are compensable under the Act [i.e., are preempted] because they are neither directed against the victim as an employee nor for reasons personal to the employee.  Hanson v. Robitshek-Schneider Co., 209 Minn. 596, 600, 297 N.W. 19, 22 (1941).

Based on the record before us, we conclude McGowan's injuries are covered under the Act because they resulted from an assault arising solely out of McGowan's activities as an employee.  "While it may be admitted that there is no clearer example of non-industrial motive than rape, it is equally clear . . . that employment that requires women to be in isolated places is a causal factor contributing to such an attack."  1 Arthur Larson & Lex K. Larson, The Law of Workmen's Compensation, § 11.11(b) at 3-197 to 3-198 (1994) (footnote omitted).  It is also equally clear that McGowan's employment was a causal factor contributing to her being raped.  At the time she was raped, McGowan was the shelter's director and had never had any contact with her assailant outside the workplace.  Further, the assault occurred during working hours, in her office, while she was directly engaged in the performance of her work duties.  Based on these facts, we cannot say that the rape arose from circumstances unrelated to McGowan's employment.

Id. at 834.

In Meintsma, a ritual existed at the defendant-employer that union employees would administer spankings to other union employees on their birthdays.  684 N.W.2d at 437.  These spankings took place on the defendant-employer's premises either during or immediately after working hours.  Id.  A few days after his birthday, the plaintiff, a union member, was grabbed off of his stool from behind, thrown onto a concrete floor, and spanked by union members with a wooden paddle fashioned from a two-by-four.  Id. at 438.  The plaintiff later filed suit against his employer, alleging *inter alia* claims for assault and battery, negligent retention, and negligent supervision; the employer moved for summary judgment, arguing that the plaintiff's claims were preempted by the WCA.  As in McGowan,

the plaintiff argued that the assault exception applied, but the Supreme Court disagreed.

The court noted:

> In <u>McGowan</u>, a client of a homeless shelter sexually assaulted the director of the shelter in her office.  We held that the assault exception did not apply because McGowan's injuries "resulted from an assault arising solely out of [her] activities as an employee."  In reaching that determination, we considered whether McGowan's employment was a "causal factor contributing" to the sexual assault.  *The relevant causal factors were that the assault occurred during working hours in the victim's office while she was performing her duties and that the rapist had no contact with the victim outside of the workplace.*  Based on these facts, we stated that we could not say "the rape arose from circumstances unrelated to McGowan's employment."  Here, the incident occurred during working hours in the workplace.  Meintsma had no meaningful contact with the co-employees outside of the workplace, there is no evidence of personal animosity towards Meintsma, and other employees were spanked in the same manner on their birthdays.  Therefore, the assault exception is not applicable because the provocation or motivation for the spanking arose solely out of the activity of Meintsma as an employee and not out of personal animosity.

<u>Id.</u> at 439 (emphasis added) (internal citations omitted).

As this Court has previously noted, the decisions in <u>Meintsma</u> and <u>McGowan</u> rest upon a rocky foundation.  <u>See</u> <u>Klaahsen v. APCOA/Standard Parking, Inc.</u>, No. Civ. 02-620, 2002 WL 1397041, at *5-6 & n.3 (D. Minn. June 26, 2002) (Kyle, J.).  The rationale underlying these holdings, if extended to its logical conclusion, would mean that nearly all physical assaults are compensable under the WCA if they occurred in the workplace, during working hours, while the plaintiff was engaged in his or her job duties.  Such a result appears to conflict with the plain language of the assault exception excluding certain intentional workplace assaults from the reach of the WCA.  Indeed, the Supreme Court's

logic seems to read the phrase "caused by the act of a . . . fellow employee intended to injure the employee because of personal reasons" right out of the statute.

Nevertheless, as a federal court sitting in diversity, this Court is obligated to apply McGowan and Meintsma.  See, e.g., Fairbrook Leasing, Inc. v. Mesaba Aviation, Inc., No. 04-3791, 2006 WL 1877065, at *8 (D. Minn. July 6, 2006) ("The federal courts sitting in diversity must follow the rulings of a state's highest court concerning matters of state law.") (citing Swope v. Siegel-Robert, Inc., 243 F.3d 486, 496 (8th Cir. 2001)).  The undersigned has done so, reluctantly, on at least two prior occasions.  See Mennis v. Prime Hospitality Corp., No. Civ. 03-4191, 2004 WL 1987229, at *12 (D. Minn. Sept. 7, 2004) (Kyle, J.) (battery claim outside of assault exception and therefore preempted because conduct occurred during working hours in the workplace and plaintiff had no contact with assailants outside of work); Klaahsen, 2002 WL 1397041, at *5-6 (same).  The Court is constrained to do so again here and, based on McGowan and Meintsma, concludes that Edralin's claims do not fall within the assault exception.  As alleged in the Complaint, Edralin's injuries arose from conduct that occurred in the workplace, during working hours, while Edralin was engaged in his job duties.  (Compl. ¶¶ 7, 22, 28, 35-37.)  Under these circumstances, there exists no set of facts that can be proven consistent with the allegations in the Complaint from which a jury could find that Thompson's conduct "arose from circumstances unrelated to [the plaintiffs'] employment."  McGowan, 527 N.W.2d at 834; accord Meintsma, 684 N.W.2d at 439; Klaahsen, 2002 WL 1397041, at *6.

-9-

In an attempt to salvage his claims, Edralin directs the Court's attention to several Minnesota Court of Appeals decisions holding that the plaintiff's claims were not compensable under the WCA and therefore were not preempted. (Mem. in Opp'n at 8-16.) The primary cases upon which Edralin relies – Olson v. Movie Gallery Services, Inc., No. A05-1396, 2006 WL 1529396 (Minn. Ct. App. June 6, 2006); Kopet v. General Mills Inc., No. A04-1708, 2005 WL 1021651 (Minn. Ct. App. May 3, 2005); and Stengel v. East Side Beverage, 690 N.W.2d 380 (Minn. Ct. App. 2004) – all note that in McGowan, the supreme court stated that the nature of the plaintiff's employment "was a causal factor contributing to the attack" because it placed her at an increased risk of assault. And, in each of these cases, the court concluded that the assault exception applied because (unlike in McGowan) the nature of the job held by the plaintiff did not place him or her at an increased risk of assault. See Olson, 2006 WL 1529396, at *4 (plaintiff worked as movie-rental establishment customer service associate); Kopet, 2005 WL 1021651, at *3-4 (plaintiff loaded and unloaded grain from trucks and rail cars); Stengel, 690 N.W.2d at 386 (plaintiff made signs for beverage company).[3] Edralin urges the Court to disregard McGowan and apply Olson, Kopet, and Stengel because the nature of his position – pizza cook – did not increase his risk of assault. (Mem. in Opp'n at 16-18.) The Court declines Edralin's

---

[3] Edralin also directs the Court's attention to Johnson v. Ramsey County, 424 N.W.2d 800 (Minn. Ct. App. 1988), which pre-dates McGowan. (Def. Mem. at 12 & n.3.) There, the court concluded that the workplace assault at issue – a kiss by a co-worker – fell within the assault exception because the kiss "had no association with the job itself." Id. at 805. Johnson cannot be viewed as good law post-McGowan, because the kiss occurred during working hours, in the defendant's office, while the plaintiff was engaged in his work duties. See id. at 803.

invitation, however, because the cases he cites appear to inappropriately rely on dicta from

McGowan.[4]

Edralin is correct that McGowan discussed the nature of the risks inherent in the

plaintiff's position in its discussion of the applicability of the assault exception.  527

N.W.2d at 834.  The court's conclusion that the assault exception did not apply, however,

was premised *solely* on the fact that the assault occurred in the workplace, during working

hours, while the plaintiff was engaged in her job duties, and when the plaintiff had no

contact with her assailant outside of work.  Id. at 834; see also Meintsma, 684 N.W.2d at

439 (noting that the only relevant factors considered by McGowan were that "the assault

occurred during working hours in the victim's office while she was performing her duties

and that the rapist had no contact with the victim outside of the workplace").  Moreover,

McGowan analyzed the nature of, and risks inherent in, the plaintiff's position only when

discussing *causation*, 527 N.W.2d at 834 ("McGowan's employment was a causal factor

contributing to her being raped"), but the assault exception deals with *motivation*, not

causation; "it examines *why* the person who harmed the plaintiff *intended* to do so,"

Klaahsen, 2002 WL 1397041, at *5 n.3.  The inescapable conclusion, therefore, is that

---

[4] Although not entirely clear from his Opposition, Edralin also appears to argue that "evidence
of repeated sexual comments and assaults directed at the plaintiff" is sufficient to exempt an assault and
battery claim from the scope of the WCA.  (Mem. in Opp'n at 16 (citing Olson, Kopet, Stengel, and
Huffman v. Pepsi-Cola Bottling Co. of Minneapolis & St. Paul, No. C7-94-2404, 1995 WL 434467
(Minn. Ct. App. July 25, 1995).)  Nothing in Meintsma and McGowan, however, supports that
proposition.

McGowan's analysis of the risks inherent in the plaintiff's position was not a factor in the court's decision and was dicta.

For this reason, Olson, Kopet, and Stengel appear to "mutate[] the standard announced and consistently adhered to by the Minnesota Supreme Court" in Meintsma and McGowan.  (Reply Mem. at 7 n.5.)  It is those holdings, even if questionable, that constitute the law this Court must apply, not the conflicting decisions of the Minnesota Court of Appeals.  Fairbrook Leasing, 2006 WL 1877065, at *8.  Under the holdings in Meintsma and McGowan, the assault exception is inapplicable.  Accordingly, Edralin's tort claims are preempted.

In a belated attempt to salvage his claims, Edralin argues that even if the assault exception does not apply, the "co-employee exception" does.  (Mem. in Opp'n at 21 n.6.)  Edralin asserts that "[c]onduct by a co-employee is not covered under the WCA where the injury resulted from gross negligence or it was intentionally inflicted by the co-employee."  (Id. (citing Minn. Stat. § 176.061, subd. 5(c)).)  This exception, however, applies only to claims brought by an employee *against his co-employees*.  See, e.g., Meintsma, 684 N.W.2d at 441; Wicken v. Morris, 527 N.W.2d 95, 98 (Minn. 1995).  Here, Edralin has alleged his tort claims against Bon Appetit only.  Accordingly, the co-employee exception does not apply.[5]

---

[5] Bon Appetit also argues that Edralin's negligence claims are preempted by the WCA because the assault exception applies only to intentional, not negligent, acts.  (Def. Mem. at 4 n.2; Reply Mem. at 9 n.8.)  Because the Court has already concluded that Edralin's claims do not fall within the ambit of the assault exception, it is not necessary to address this additional argument.

-12-

**Conclusion**

Based on the foregoing, and all the files, records, and proceedings herein, it is

**ORDERED** that Defendant Bon Appetit's Motion to Dismiss Counts II and III of Plaintiff's

Complaint (Doc. No. 8) is **GRANTED** and those Counts are **DISMISSED WITH**

**PREJUDICE**.

Dated: October __3__, 2006                                     s/Richard H. Kyle
                                                                RICHARD H. KYLE
                                                                United States District Judge

-13-